**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alison Mayfield, | No. CV-22-02205-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

Pending before the Court is Defendant City of Mesa's ("Defendant") Motion to Dismiss and Certificate of Conferral ("Motion," Doc. 18). The Court now rules on the Motion.

## I.     BACKGROUND

On January 1, 2022, between 9 and 10 pm, Officer Hall of the Mesa Police Department pulled Alison Mayfield ("Plaintiff") over for "weaving." (Doc. 13 ¶ 17). Officer Hall realized that Plaintiff was deaf and attempted, but was unable, to obtain an officer capable of communicating in American Sign Language (an "ASL interpreter"). (Doc. 13 ¶¶ 13–14). Body camera footage shows that Plaintiff suggested using written communication when Officer Hall was unable to secure an ASL interpreter.[1]

Officers Hall and Van Huisen, the latter of whom arrived after Plaintiff was pulled over, communicated with Plaintiff using various methods including text messages,

---

[1] Plaintiff alleges in her Complaint that she requested an ASL interpreter specifically multiple times. However, the uncontested body camera footage incorporated into Plaintiff's Complaint refutes this allegation; therefore, the Court need not accept it as true. *See* Section III.B, *infra*.ffinal

1   rudimentary letter-signing, and handwritten notes, to conduct the routine elements of a

2   potential DUI stop. (Doc. 13 ¶ 20; Doc. 21 at 1). Officer Hall conducted a field sobriety

3   test on Plaintiff, which Plaintiff struggled to complete. (Doc. 13 ¶ 21–23). Plaintiff alleges

4   that Officer Hall failed to effectively communicate the instructions for the test, such that

5   Plaintiff could understand the instructions "only partially." (Doc. 13 ¶ 20). Plaintiff further

6   claims that her performance was hampered by (1) vertigo, related to her disability, (2) it

7   being approximately 48 degrees Fahrenheit outside, and (3) her "dire need to use the

8   restroom," all of which she alleges the officers ignored. (Doc. 13 ¶ 23).

9   The officers then handcuffed Plaintiff, with her hands in front of her,[2] and

10  transported her to the DUI processing facility, where Plaintiff submitted to a blood draw.

11  (Doc. 13 ¶ 29). Officer Voeltz, who was present at the DUI processing facility, sought to

12  assist with communicating in ASL, but he was not a "qualified ASL interpreter." (Doc. 13

13  ¶¶ 26–27). Plaintiff alleges that Officer Voeltz's communication shortcomings, like those

14  of Officers Hall and Van Huisen, represented a failure to "ensure effective communication

15  with [Plaintiff] during critical arrest and post-arrest proceedings. (Doc. 13 ¶ 27). Plaintiff

16  was charged pursuant to A.R.S. § 28-693(a) for reckless driving and A.R.S. § 28-138(A)(3)

17  for DUI drugs or metabolite. (Doc. 21 at 6–7).[3] On October 26, 2022, Plaintiff pled guilty

18  to reckless driving, and the DUI charge was dismissed. (*Id.* at 7).

19  Plaintiff filed this suit against Defendants, (Doc. 1), and her operative Complaint

20  alleges two counts: (1) violation of the Americans with Disabilities Act ("ADA"), 42

21  U.S.C. §§ 12131 *et seq.*, and (2) violation of Section 504 of the Rehabilitation Act ("RA"),

22  29 U.S.C. § 794. (*See generally* Doc. 13). Plaintiff alleges that the officers, acting within

23  their capacity as employees, discriminated against Plaintiff based on her disability by

24  failing to provide reasonable accommodations and denying her meaningful access to the

25  ─────────────────

26  [2] The Court acknowledges that Plaintiff does not specifically allege this fact in her Complaint; however, she describes attempts to communicate using ASL. (Doc. 13 ¶ 24). The Court draws a reasonable inference that her hands were cuffed in front of her, not

27  behind her back, for her to communicate through ASL.
    [3] For reasons discussed in Section III.A, *infra*, the Court takes judicial notice of the official

28  court filings and Plaintiff's guilty plea, making these facts properly considered on a motion to dismiss.

1   services provided by Defendants, namely the ability to fully participate in her own criminal
2   proceedings. (Doc. 13 ¶¶ 52, 77–78). She further alleges that Defendant City of Mesa failed
3   to train its employees "on how to interact with deaf or hearing-impaired individuals, and
4   that this failure result[ed] in significant communication breakdowns." (Doc. 13 ¶ 35).

5   ## II.     LEGAL STANDARD

6          Federal Rule of Civil Procedure 8(a) requires a complaint to contain, among other
7   things, "a short and plain statement of the claim showing that the pleader is entitled to
8   relief." Fed. R. Civ. P. 8(a). A defendant can test if a plaintiff has met the requirements of
9   Rule 8(a) by filing a motion to dismiss for "failure to state a claim on which relief can be
10  granted" under Rule 12(b)(6).

11         To decide a 12(b)(6) motion, the Court generally focuses on what the plaintiff has
12  written in the complaint. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice*
13  *and Procedure § 1357* (3d ed. 2004 & Supp. 2022). This is because a Court usually cannot
14  consider anything outside the complaint without transforming the motion to dismiss into a
15  motion for summary judgment under Federal Rule of Civil Procedure 56. There are two
16  recognized exceptions, however, in which a court may consider evidence otherwise outside
17  of the complaint without converting the motion: (1) evidence that the court has judicially
18  noticed, and (2) evidence incorporated, either literally or by reference, into the plaintiff's
19  complaint. *Lee v. City of L.A.*, 250 F. 3d 668, 688–89 (9th Cir. 2001); *see also* Section
20  III.B, *infra*.

21         In deciding whether a complaint will survive a 12(b)(6) motion, the Court does not
22  need to accept a complaint's legal conclusions, but it does accept as true all the complaint's
23  factual allegations, i.e., the plaintiff's factual description of what happened. *Ashcroft v.*
24  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
25  (2007)). Additionally, the Court must interpret the complaint's allegations "in the light
26  most favorable to the plaintiff." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir.
27  2000). However, "the court need not accept as true allegations that contradict facts which
28  may be judicially noticed." *Westlands Water Dist. v. U.S., Dept. of Interior, Bureau of*

1   *Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992) (citing *Mullis v. U.S. Bankruptcy*

2   *Ct.*, 828 F. 2d 1385, 1388 (9th Cir. 1987)). The Court similarly is not required to accept as

3   true allegations that contradict documents that are incorporated into the complaint. *See*

4   *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d

5   1076, 1083 (D. Ariz. 2009).

6   A complaint will be dismissed for failure to state a claim if it lacks either "a

7   cognizable legal theory or . . . sufficient facts alleged under a cognizable legal theory."

8   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To allege sufficient

9   facts under a cognizable legal theory, a complaint must contain factual allegations from

10  which the court can reasonably conclude that the plaintiff is not just possibly entitled to

11  relief, but plausibly entitled to relief. *See Iqbal*, 556 U.S. at 678.

12  **III.   DISCUSSION**

13  **A. The *Heck* Bar**

14  The Court first determines whether Plaintiff's claims are barred by application of

15  the U.S. Supreme Court's ("SCOTUS") decision in *Heck v. Humphrey*, 512 U.S. 477

16  (1994). Defendants argue that Plaintiff's claims are barred because judgment in favor of

17  Plaintiff would "necessarily imply the invalidity of [her] conviction or sentence." (Doc. 21

18  at 8). The Court agrees.

19  As an initial matter, Defendants seek judicial notice of court filings, including

20  Plaintiff's criminal case filings and guilty plea. Defendants assert that such filings are

21  public records, proper subjects of judicial notice. The Court agrees. *See U.S. v. Black*, 482

22  F. 3d 1035, 1041 (9th Cir. 2007) (citing *United States ex rel. Robinson Rancheria Citizens*

23  *Council v. Borneo, Inc.*, 971 F. 2d 244, 248 (9th Cir. 2002); *Noel v. Mitsubishi UFJ Fin.*

24  *Grp. Inc.*, No. CV-18-03253-PHX-SPL, 2019 WL 5213345, at *2 n.3 (D. Ariz. Oct. 16,

25  2019). As such, the Court takes judicial notice of the public court filings Defendants attach

26  to the Motion.[4]

27  In this case, Plaintiff argues that she was denied reasonable accommodations and

28

---

[4] *See* Section II, *supra* (court may consider facts judicially noticed when considering a motion to dismiss).

was discriminated against throughout her arrest—namely, she asserts that Defendants "deliberately" failed to provide an ASL interpreter for actions such as performing a field sobriety test, performing a blood draw, and providing Plaintiff written *Miranda* warnings. (*See generally* Doc. 13). Plaintiff's Complaint specifically alleges that Defendant "fail[ed] to ensure effective communication," such that Plaintiff was "denied" her expectancy of fully participating in her own criminal proceedings. (*Id.* ¶¶ 27, 53, 63). The facts this Court would need to accept as true to find for Plaintiff thus would necessarily imply that her charge and/or conviction was invalid. Under the ADA, this Court would need to find that Defendant failed to provide adequate communication and denied her the ability to participate in her own criminal proceedings to a level that rises to discrimination,[5] which almost certainly would also rise to a due process violation.[6] Similarly, under the RA, Plaintiff would need to prove she was denied the service of effective communication by the police officers involved in her arrest,[7] which would imply the invalidity of Plaintiff's arrest for the same reason. That is, if this Court finds that the officers' alleged failures violate the ADA and RA, this Court necessarily implies that the officers violated Plaintiff's due process rights and invalidly arrested her and collected evidence that supported the charges against her. Additionally, Plaintiff's arguments regarding the issuance of written *Miranda* warnings implicate *Heck* because in order to agree with Plaintiff, the Court would necessarily find that the circumstances of Plaintiff's arrest violated her Fifth amendment rights.[8] *Heck* therefore bars Plaintiff's claims.

---

[5] A prima facie case for violation of Title II of the ADA includes that a plaintiff was either excluded from participation or denied the benefits of a public entity's services, programs, or activities, or was *otherwise discriminated against by the public entity*. *Payan v. L.A. Cmty. Coll. Dist.*, 11 F. 4th 729, 737–38 (9th Cir. 2021) (citations omitted) (emphasis added).

[6] That is, if this Court finds that Plaintiff was actionably denied effective communication, this Court necessarily finds she was denied the ability to understand police instructions—a due process violation. *See Bermudez-Arenas v. City of McMinnville*, No. 3:16-CV-2164-PK, 2017 WL 2293361, at *3 (D. Or. Mar. 6, 2017) (finding that where an individual would, "in an encounter with the police, not be able to understand commands," a violation of the individual's Fourteenth amendment rights existed).

[7] A prima facie case for violation of RA includes that a plaintiff was *denied the benefit or services* solely by reason of her disability. *Lovell v. Chandler*, 303 F. 3d 1039, 1052 (9th Cir. 2002) (citation omitted) (emphasis added).

[8] *See generally Miranda v. Arizona*, 384 U.S. 436 (1966).

Plaintiff argues that *Heck* does not apply in her case for various reasons, each of which the Court addresses below. First, Plaintiff argues that because she "lacks a habeas option for the vindication of her federal rights," *Heck* should not apply. To support this proposition, Plaintiff cites *Nonnette v. Small*, 316 F. 3d 872 (9th Cir. 2002). However, Ninth Circuit decisions subsequent to *Nonnette* contradict Plaintiff's conclusion. In *Roberts v. City of Fairbanks*, the Ninth Circuit explained the difference between a "conviction" and "incarceration," stating that a person to whom habeas relief is no longer available is nonetheless barred from challenging her conviction itself because convictions remain "extant" after a sentence is served. 947 F. 3d 1191, 1203 (9th Cir. 2020). Further, the Ninth Circuit has since described the exception outlined in *Nonnette* as "narrow," stating that "*Nonnette*'s relief from *Heck* 'affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters,' not challenges to an underlying conviction." *Lyall v. City of L.A.*, 807 F.3d 1178, 1192 (9th Cir. 2015) (quoting *Guerrero v. Gates*, 442 F. 3d 697, 705 (9th Cir. 2006)) (internal quotations omitted). This narrow exception does not apply to Plaintiff; therefore, Plaintiff's first argument is unavailing.

Plaintiff next argues that *Heck* should not apply because "[Plaintiff] does not seek to challenge or overturn her underlying plea agreement," (Doc. 24 at 3), citing primarily to *Byrd v. Phoenix Police Dep't*, 885 F. 3d 639 (9th Cir. 2018), and *Ove v. Gwinn*, 264 F. 3d 817 (9th Cir. 2001). Plaintiff asserts that she is instead challenging "the procedures that led to her arrest and interrogation, and not her underlying guilty plea." (Doc. 24 at 5). However, Plaintiff's challenge in this case is different from the challenges in the cases she cites. In each cited case, a court separated the "procedure" a plaintiff challenged from the underlying conviction the plaintiff had received because the alleged procedural defect each plaintiff challenged did not actually form the basis of or even provide some evidence for the charge or conviction.

In *Byrd*, for example,[9] a plaintiff sought to challenge an illegal search that had

---

[9] Plaintiff cites various cases other than *Byrd* that are similarly inapposite here. *See, e.g.*, *Weilburg v. Shapiro*, 488 F. 3d 1202 (9th Cir. 2007) (procedures to extradite were separate from the conviction itself); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F. 3d 592 (6th Cir. 2007 (challenging the failure to afford an indigency hearing did not implicate the

"nothing to do with the evidentiary basis for his . . . conviction." *Byrd*, 885 F. 3d at 645. This was the case because Byrd's conviction was based on drugs that he threw while the police were questioning him, which the police subsequently recovered some distance away. The allegedly illegal search was an action entirely separate from the discovery of the "evidence upon which [his] criminal charges and convictions were based," because the officers in *Byrd* discovered such evidence from Byrd's voluntary throwing of the evidence, not from the search that Byrd later challenged. *Id.*

Plaintiff's efforts to separate her challenge of the "procedures that led to her arrest" from a potential challenge to the underlying conviction are misguided in light of the core inquiry under *Heck*. In *Heck*, SCOTUS instructed courts to determine whether a judgment in Plaintiff's favor would necessarily imply the invalidity of the conviction. In Plaintiff's case, the "procedures" she alleges were faulty are the actions taken by the police officers that provided the evidentiary basis upon which her criminal charges were based. The officers asked her to perform a field sobriety test, and she struggled with the field sobriety test. She claims that the officers failed to "provide effective communication," to such an extent that the officers "denied [her] the opportunity to understand the instructions to the tests," (Doc. 13 ¶ 20), which is essential in conducting an effective field sobriety test. Therefore, the Court finds this argument unpersuasive.

Plaintiff also focuses her attention on the fact that her conviction "derives from her plea, not from a verdict obtained with supposedly illegal evidence," so the validity of her conviction "does not in any way depend on the legality of the blood draws or the sobriety testing." (Doc. 24 at 4).[10] This argument similarly deviates from the core purpose of the *Heck* bar, which is to ensure that plaintiffs cannot collaterally attack a valid conviction as implicitly invalid by challenging the evidence—and the procedures to obtain it—upon

underlying conviction); *Bogovich v. Sandoval*, 189 F. 3d 999 (9th Cir. 1999) (ADA claim challenging denial of accommodations like ASL interpreter while in prison still challengeable because it related to the conditions of the confinement, not the underlying charge or conviction).

[10] Plaintiff cites *Ove* to support this particular interpretation of the *Heck* bar. However, *Ove* is a Ninth Circuit decision from 2001, while *Byrd* was decided in 2018 and clarified the Ninth Circuit's approach to the *Heck* bar, as discussed in this paragraph. The Court thus declines to adopt Plaintiff's interpretation under *Ove*.

which the plaintiff's charge and conviction were based. *See Byrd*, 885 F. 3d at 645 (clarifying that the *Heck* bar applies when a plaintiff challenges "'the search and seizure of the evidence upon which their criminal *charges* and convictions were based'") (citation omitted) (emphasis added). Here, there is no question that Plaintiff was charged with both reckless driving and DUI. Moreover, although the concurrence in *Byrd* notes some inconsistencies in the Ninth Circuit's application of *Heck* and acknowledges an argument like Plaintiff's, the *Byrd* court ultimately did not adopt this approach. Thus, this Court is bound by the majority approach in *Byrd*.

Finally, Plaintiff argues that even if the present suit "cast[s] a shadow of a doubt" on the validity of her conviction or "set[s] the stage for a collateral attack," that is not enough to apply the *Heck* bar. (Doc. 24 at 6). As discussed above, Plaintiff's action here does not merely *cast a doubt* upon the validity of her conviction; if the Court were to find that Defendant failed to effectively communicate with Plaintiff to such an extent that Plaintiff could not understand the officers' instructions, the Court would *necessarily* be implying that Plaintiff never should have been charged and ultimately convicted based on all evidence collected as a result of the field sobriety test.

Therefore, the Court finds that the *Heck* bar applies in Plaintiff's case. It is appropriate to dismiss Plaintiff's claims on this ground.

### B. Incorporation-by-Reference of Police Body Camera Footage

Although the Court has found that *Heck* bars Plaintiff's claims, the Court will briefly address the merits in the alternative. In doing so, the Court first addresses Defendants' argument that the police body camera footage should be incorporated by reference into Plaintiff's Complaint.

Incorporation-by-reference is a judicially created doctrine in which the court treats certain pieces of evidence as though they are part of the complaint itself. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F. 3d 988, 1002 (9th Cir. 2018). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* A defendant

may seek to incorporate the document into the complaint "'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *U.S. v. Ritchie*, 342 F. 3d 903, 907 (9th Cir. 2003)).

Mere mention of the existence of a document is not enough to incorporate the contents of the document. *Id.* Moreover, it is improper for the court to accept the truth of matters asserted in incorporated evidence only "to resolve factual disputes against the plaintiff's well-pled allegations in the complaint"—that is, incorporation-by-reference should not override the "fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Id.* at 1014. *But see* Section II, *supra* (the court need not accept as true allegations that contradict documents incorporated by reference).

The Court will incorporate the police body camera footage into Plaintiff's Complaint. Although there is no bright line rule for what is considered "extensively" referring to evidence, Plaintiff incorporates specific quotes from the body camera footage at least six times in her general allegations;[11] she does not merely mention that the footage exists. Additionally, the Court finds that Plaintiff has attempted to introduce only the portions of the footage that support her claims, while omitting portions that harm them. Plaintiff clearly does not dispute the authenticity or accuracy of the footage, as she references it throughout her Complaint and does not address the issue in her response to Defendant's Motion. Thus, the Court incorporates the body camera footage by reference into Plaintiff's Complaint and in its analysis below declines to accept Plaintiff's allegations as true when they are irrefutably contradicted by the body camera footage.

### C.  Plaintiff's Prima Facie Case

#### i.  Title II of the ADA & Section 504 of the RA

To make a prima facie claim for violation of Title II of the ADA, a plaintiff must show the following: (1) she is a qualified individual with a disability; (2) she was either

---

[11] In coming to this number, the Court considered both explicit mentions of the body camera footage, (*see, e.g.*, Doc. 13 ¶ 12), as well as references to what officers could be "heard" saying, (*see, e.g.*, Doc. 13 ¶ 20), which would necessarily be found in the body camera footage.

excluded from participation or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *Payan v. L.A. Cmty. Coll. Dist.*, 11 F. 4th 729, 737–38 (9th Cir. 2021) (citations omitted).

As applied in arrests, the Ninth Circuit has recognized two types of claims: (1) wrongful arrest, where a plaintiff is wrongfully arrested because their disability is misperceived as criminal conduct, and (2) reasonable accommodation, where officers fail to reasonably accommodate a plaintiff's disability in a way that causes the person to suffer greater injury than other arrestees. *See Sheehan v. City & Cty. of San Francisco*, 743 F. 3d 1211, 1232 (9th Cir. 2014). "[E]xigent circumstances inform the reasonableness analysis under the ADA." *Id.* The requirement that entities provide effective communication does not mean that a deaf individual is entitled to an interpreter every time they ask for it; instead, "the test is whether an individual has received an auxiliary aid sufficient to prevent any 'real hindrance' in her ability to exchange information." *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F. 4th 858, 867 (9th Cir. 2022) (citation omitted).

Plaintiff argues that the "primary consideration requirement" under the ADA required the officers to provide Plaintiff with an ASL interpreter. This requirement mandates that a covered entity must honor the choice of the individual with a disability when determining the type of auxiliary aids to use, unless it can be demonstrated that another equally effective means of communication is available, or that the use of the means chosen by the individual would result in a fundamental alteration to the entity's program or in an undue burden. *Bax*, 52 F. 4th at 867–68.

Plaintiff has failed to show both that she was not provided "reasonable accommodations" and that she suffered a greater injury than other arrestees. Addressing the "primary considerations requirement" first, even taking as true Plaintiff's allegations that she "repeatedly requested" an ASL interpreter, the body camera footage also indisputably establishes that Plaintiff suggested to the officers that they could use written

communication.[12] Moreover, the body camera footage establishes that Defendant did not deny Plaintiff an ASL interpreter—one simply was not immediately available as the arrest occurred at nighttime on a holiday. The Court finds that, in light of the exigent circumstances and fleeting evidence involved in a DUI arrest, to require an ASL interpreter to be immediately available in situations like Plaintiff's would be to impose an undue burden, especially when Plaintiff repeatedly indicated that she understood the communications officers made to her. The body camera footage indicates that Plaintiff suffered no "real hindrance" in her ability to exchange information. Therefore, Plaintiff's ADA claim fails on the merits.

To make a prima facie claim for violation of the RA, a plaintiff must show the following: (1) she is disabled within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her disability; and (4) the program providing the benefit or services receives federal financial assistance. *Lovell v. Chandler*, 303 F. 3d 1039, 1052 (9th Cir. 2002) (citation omitted). Notably, the "primary consideration requirement" mentioned in the context of the ADA is inapplicable to claims under the RA. *Bax*, 52 F. 4th at 868. For the same reasons as stated in dismissing Plaintiff's ADA claim, the Court finds Plaintiff's RA claim fails.[13]

### ii.  Plaintiff's "Failure-to-Train" Theory

Plaintiff also asserts a failure-to-train theory in her Complaint, alleging that Defendant City of Mesa failed to train officers in the "importance of utilizing ASL interpreters" and "how to interact with deaf or hearing-impaired individuals." (Doc. 13 ¶¶ 32, 34). The Court first notes that the circuits have not reached a consensus regarding the applicability of a "failure-to-train" theory to ADA and RA claims. However, the Ninth Circuit has acknowledged a failure-to-train theory in this context.

The parties do not cite, and the Court has not located, a case in which the Ninth

---

[12] Officer Hall's body camera footage, (Def. Ex. 1 at 1:44), displays Plaintiff miming writing with a pen on paper, almost immediately when Officer Hall approaches Plaintiff's vehicle.

[13] *See Bax*, 52 F. 4th at 866–68 (analyzing both ADA and RA claims under the same framework, minus the "primary consideration requirement").

Circuit has dictated a framework under which to analyze a failure-to-train theory under the ADA and/or RA. *Cf. O'Doan v. Sanford*, 991 F. 3d 1027, 1038 n.1 (9th Cir. 2021) (finding only that the plaintiff's ADA failure-to-train claim failed because the plaintiff had not shown how personnel with different training would have acted differently given the exigencies of the situation, without delineating a general framework). However, courts within the Ninth Circuit have applied the *Monell* framework for § 1983 claims to analyze failure-to-train claims under the ADA and RA.[14]

Under the *Monell* framework, Plaintiff must show that Defendant "maintains a custom, practice, or policy that amounts to deliberate indifference to [Plaintiff's] [ADA and RA] rights, and the policy results in a violation of [Plaintiff's ADA and RA] rights." *Bauer*, 2021 WL 2224016 at *16 (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978)).

The Court finds that Plaintiff's failure-to-train theory fails as a matter of law. Like the plaintiff in *O'Doan*, Plaintiff here has failed to allege any differences in the outcome had the officers been trained any differently. Given the exigencies of the situation— namely, a potential DUI with fleeting evidence at night on a holiday—as well as the officers' repeated efforts to obtain an ASL interpreter and provision of various other alternative communication methods, the Court finds that Plaintiff has not shown that improved training would have made a difference in her case. Moreover, Plaintiff does not point to any overarching custom, practice, or policy that amounts to deliberate indifference to her rights. Instead, she points to an allegedly discriminatory interaction with just three officers. This is insufficient to support an inference that the police department as a whole did not adequately train its officers.

As such, the Court finds that Plaintiff's failure-to-train theory fails as a matter of law.

---

[14] *See, e.g.*, *Bauer v. City of Pleasanton*, No. 19-CV-04593-LB, 2021 WL 2224016, at *19 (N.D. Cal. June 2, 2021) ("Assuming that a failure-to-train claim is cognizable, the training claim fails for the reasons that it fails under *Monell*."); *Green v. Tri-City Metro. Transp. Dist.*, 909 F. Supp. 2d 1211, 1220 (D. Or. 2012) ("The Ninth Circuit has not set out a standard for failure-to-train claims under the ADA. The Court, therefore, analogizes Plaintiff's ADA claim to a failure-to-train claim brought under § 1983.").

### iii.  Damages

As the Court has held that Plaintiff's claims are barred by *Heck*, and in the alternative, fail as a matter of law, the Court need not reach issues the parties raise regarding damages.

### D.  Leave to Amend

The Ninth Circuit has instructed district courts to grant leave to amend, *sua sponte*, when dismissing a case for failure to state a claim, "'unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Futility alone justifies denying leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (1995). Here, the Court finds that amendment would be futile for two alternative reasons: (1) Plaintiff will be unable to amend her complaint to overcome the *Heck* bar, and (2) Plaintiff will be unable to amend her complaint to overcome the indisputable evidence in the incorporated body camera footage. Therefore, the Court denies leave to amend.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss, (Doc. 21), is **GRANTED**. This case is dismissed with prejudice and the Clerk of the Court shall enter judgment accordingly.

Dated this 25th day of October, 2023.

James A. Teilborg
Senior United States District Judge